SEYFARTH SHAW LLP
D. Joshua Salinas (SBN 282065)
*jsalinas@seyfarth.com*
Sierra J. Chinn-Liu (SBN 322994)
*schinnliu@seyfarth.com*
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

Attorneys for Plaintiff
VOXEL LABS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| VOXEL LABS INC., | Case No. |
|---|---|
| Plaintiff, | **VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES** |
| v. | |
| BRIAN BENSON, | **JURY TRIAL DEMANDED** |
| Defendant. | |

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

Voxel Labs Inc. ("Voxel"), by and through its attorneys, complains as follows against Brian Benson ("Benson" or "Defendant"). In support of its Verified Complaint, Voxel states as follows:

### NATURE OF THE CASE

1. Voxel is a San Francisco-based technology company that specializes in artificial intelligence (AI) to enhance workplace safety and operational efficiency, primarily in industrial environments such as warehouses, manufacturing facilities, distribution centers, and port facilities. Founded in 2020, Voxel's core platform integrates with a company's existing security camera infrastructure to automatically identify hazards, unsafe behaviors, and operational inefficiencies in real-time. Voxel's services allow its customers to make their workplaces and workplace procedures safer and limit workplace injuries and workers' compensation claims.

2. Until March 20, 2026, when his role was eliminated, Benson was a Director of Solutions Engineering at Voxel. In connection with, and as a condition of his Voxel employment, Benson entered into a Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement"). Among other things, pursuant to that agreement, Benson agreed not to use, access, disclose or copy any confidential, proprietary, or trade secret information except for the benefit of the company.

3. Unfortunately, Voxel discovered that after his employment terminated, Benson accessed Voxel's computer network to acquire confidential, proprietary, and trade secret information regarding Voxel's customers. This information included the identities of Voxel's customers and, more specifically, the names and contact information for decision makers at those customers. This information also included site-specific locations where Voxel's services were deployed or under evaluation. This is the exact type of information that would provide a competitor an unfair and unearned competitive advantage against Voxel.

4. Voxel demanded that Benson immediately cease accessing Voxel's computer networks and to account for all Voxel information he improperly acquired. Benson ignored Voxel's demands, precipitating this lawsuit. Voxel now seeks immediate injunctive relief for

1

Benson to return all Voxel information in his custody, possession or control, to account for all Voxel information transmitted to third parties, and for the remediation of all Voxel information in Benson's custody, possession, or control.

## THE PARTIES

5. Voxel is a Delaware corporation with a principal place of business in San Francisco, California.

6. Benson is a natural person who resides in Modesto, California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* ("DTSA"), and pendent jurisdiction over the state-law claims because such claims arise from the same common nucleus of operative facts as Voxel's claim under the DTSA.

8. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of property that is the subject of the action is situated in this judicial district.

9. This Court has personal jurisdiction over Benson because he is a citizen of and resides in California.

10. At all relevant times, Benson resided and worked in California, accessed Voxel systems from California, and engaged in the conduct alleged herein in California. Accordingly, Voxel's claims arise under and are governed by California law.

## FACTUAL ALLEGATIONS

### Voxel and its Trade Secrets

11. As stated previously, Voxel is a leading provider of AI-powered services enabling businesses to automatically identify hazards, unsafe behaviors, and operational inefficiencies in real-time.

12. Voxel, as a service business, develops and maintains a wide variety of proprietary, confidential, and trade secret information. Pertinent to this matter, Voxel has developed

2

relationships with individuals at both existing and potential customers who are in decision maker roles to award business to Voxel.

13.    The identity, contact information, and associated operation details for specific decision makers at Voxel's current and potential clients, including the locations of customer sites at which Voxel provides or proposes to provide its services, are considered highly confidential and proprietary. For example, while Voxel publicizes its relationship with a large global logistics company, it keeps the identity and contact information of the specific persons within that client who decide to do business with Voxel highly confidential.

14.    This information is kept highly confidential because it would enable a competitor of Voxel to immediately, without the investment of the time and resources that Voxel expended, identify and target the correct decision makers at the appropriate customer sites and operational locations where Voxels services are deployed or under evaluation. The number, location, and nature of those customer sites also provides critical insight into which accounts present greater operational scope, scale, or revenue opportunity, allowing a competitor to focus its efforts on the most lucrative targets. Whereas such information required the expenditure of significant resources and took Voxel months—if not years—to obtain, a competitor who unlawfully obtained access to such information would save the time and money that Voxel incurred.

15.    Voxel stores and maintains this confidential customer decision maker information, together with associated customer site and operational information, as curated compilations within its internal databases and systems. These compilations reflect Voxel's independent selection, organization, prioritization, and association of customer decision makers with specific accounts, sites, operational contexts, use cases, and business relationships, developed through substantial investment of time, effort, and resources. The value of this information lies not merely in any individual contact, but in the collective compilation and contextual organization of the information, which is not publicly available and cannot be readily replicated by competitors through lawful means.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

16. The specific customer information described above provides independent economic value to Voxel as a result of such information being secret because it provides Voxel a competitive advantage in retaining existing customer business and, if it became known to a competitor, would allow such a competitor to identify and access decision makers and associated customer sites and operational contexts in which Voxel's services are deployed, information that would not otherwise be known and would not be learned without the expenditure of significant time and money.

17. Voxel protects its customer information with robust security measures. Among other things, Voxel limits access to its proprietary information by requiring specific login credentials, including a unique user identification and password, by monitoring access to its information for improper access, limiting access to information on a need-to-know basis, and requiring employees with access to Voxel confidential and proprietary information to enter into a Confidential Information and Invention Assignment Agreement, which prohibits the unauthorized access, use or disclosure of Voxel confidential and proprietary information.

**Benson's Employment with Voxel**

18. Benson joined Voxel in February 2022 as a Regional Sales Manager. Benson subsequently performed a number of customer-facing roles at Voxel, including as Director of Operations and most recently, Director of Solutions Engineering.

19. In each role at Voxel, Benson had direct contact with Voxel customers and personally visited customer sites.

20. In order to perform his duties and responsibilities at Voxel, Benson had access to Voxel's databases that contained compiled confidential contact information for customer personnel, as well as compiled information concerning customer sites, including site locations and related operational details associated with those customers. The identities and contact information of customer personnel, together with the associated customer site and operational information maintained in those compilations, are not publicly available or readily determinable.

4

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

21.    Because Benson had access to Voxel confidential and proprietary information, he was required to enter into the Confidentiality Agreement with Voxel. A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit 1**.

22.    Among other things, by entering into the Confidentiality Agreement, Benson agreed that "lists of, or information relating to, suppliers and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the [employment] Relationship" constituted Confidential Information of Voxel. (Confidentiality Agreement, § 2(b).)

23.    Benson further agreed to hold Confidential Information in the "strictest confidence, and not use, except for the benefit of the Company to the extent necessary to perform my obligations to the Company under the [employment] Relationship…any Confidential Information that I obtain, access or create… ." *Id*., § 2(a).

24.    Benson agreed to not make copies of any Confidential Information, except as authorized by the Company or in the ordinary course of performing his obligations as an employee of the Company. *Id*.

25.    Further, Benson agreed that at the termination of employment, he "will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence…belonging to the Company, its successors or assigns." *Id*., § 4.

26.    Voxel does not seek to enforce, and expressly disclaims any request to enforce, any provision of the Confidentiality Agreement that could be construed as restricting lawful competition, solicitation, or employment. Voxel seeks relief solely to protect its trade secrets and confidential information and to enforce Defendant's obligations to maintain confidentiality, refrain from unauthorized access, and return Voxel property.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

**Termination of Benson's Employment and His Unauthorized Access of Voxel Confidential Information and Trade Secrets**

27. Earlier this year, discussions were held in which it became clear to Benson that his role at Voxel may be eliminated. In response, Benson threatened several Voxel employees that, if terminated, he would retaliate against Voxel and "destroy [Voxel's] business."

28. On March 18, 2026, Benson was notified by his supervisor that his employment with Voxel would be terminated immediately, with an effective date of March 20, 2026, for payroll purposes.

29. Benson was provided a Separation Agreement by Voxel in which he further reaffirmed and agreed to abide by his obligations to Voxel pursuant to the Confidentiality Agreement. *See* Separation Agreement, attached hereto as **Exhibit 2**, at § 8.

30. On April 3, 2026, Voxel learned that Benson was accessing its platform to review customer information relating to 45 of Voxel's customer accounts. Voxel's investigation identified Benson's use of both a mobile device and a non-Voxel computer.

31. Specifically, for each customer, Benson accessed lists of users for each customer. These users are the individuals affiliated with Voxel customers who have access to and utilize the Voxel product.

32. Voxel's technical staff discovered that Benson's access to Voxel's systems subsequent to his termination appeared to include copying and pasting contact information for customer users, decision makers, and sites. Attached hereto as **Exhibit 3** is a screenshot evidencing Benson's access of Voxel's systems on April 2, 2026.

33. Voxel also discovered that, within minutes of his termination, Benson began making repeated attempts to access Voxel's Salesforce database, which includes additional confidential customer information.

34. Notably, prior to his termination, Benson had not logged into Salesforce since May 2025.

6

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

35.     In total, Voxel's analysis identified 40 separate attempts by Benson to access Voxel's servers after his termination.

36.     In all instances, Benson had no legitimate purpose, authorization, or right to access Voxel's systems.

**Benson Fails to Comply with Voxel's Demands**

37.     After discovering Benson's unauthorized access to Voxel's systems, on April 3, 2026, Voxel informed Benson that it was aware of his activities and demanded that he immediately cease attempting to access Voxel's networks, return any information taken from Voxel, and delete any copies in his possession.

38.     Benson refused those demands and failed to account for the Voxel information he accessed.

39.     On April 6, 2026, Voxel's counsel sent a follow-up letter to Benson by email and FedEx. A true and correct copy of the April 6, 2026 letter is attached here as **Exhibit 4**.

40.     Therein, Voxel demanded of Benson as follows:

- You must **immediately** cease and desist from accessing or attempting to access any Voxel database or information;

- You must **immediately** cease and desist from disparaging Voxel and its leadership. To avoid any misunderstandings, Voxel demands that you immediately cease communications with current Voxel employees, customers, and investors.

- By no later than **April 8, 2026 at 5:00 p.m. PST**, you must identify to us in writing all sources on which Voxel information may reside in your custody, possession, or control. These sources may include, but are not limited to, your mobile phone, iPad or other tablet computer, personal computers, cloud-based storage services, thumb drives and other portable storage devices, physical copies, and any other potential type of electronic or physical media.

- By no later than **April 8, 2026 at 5:00 p.m. PST**, you must identify to us in writing any person to whom you have shared, disclosed or communicated regarding any Voxel information.

- By no later than **April 10, 2026 at 5:00 p.m. PST**, you must provide access to each source in your custody, possession, or control on which Voxel information may reside, for the purpose of allowing Voxel to

7

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

investigate the access, possession and potential disclosure of its information and to remediate any such information.

41.    As of this filing, Benson failed and refused to identify in writing: (a) all sources on which Voxel information may reside, (b) any person to whom he shared, disclosed or communicated any Voxel information, or (c) provide access to each source on which Voxel information may reside.

42.    Benson's refusal to identify all locations of Voxel information in his possession, his use of non-Voxel devices to access Voxel systems, and his continued unauthorized possession of Voxel's confidential information create a substantial risk that evidence will be concealed, altered, or destroyed absent immediate injunctive relief.

43.    Voxel was forced to file this suit to recover the information Benson misappropriated, to investigate any use or disclosure of such information, and to ensure all Voxel information is permanently removed from Benson's custody, possession, or control.

### Voxel Will Be Irreparably Harmed By Benson's Conduct

44.    Voxel will suffer irreparable harm absent an order restraining Benson and all those acting in concert with him.

45.    Benson's conduct threatens the valuable trade secrets and other intellectual property that Voxel has expended substantial time and resources to develop. This information is extremely valuable to Voxel and essential to its ongoing business operations. Unless Benson and all those acting in concert with him are permanently restrained, the intellectual property Voxel has developed over the years will be irreparably harmed.

46.    Voxel has invested considerable time and money in the development of the trade secrets and/or confidential information misappropriated by Benson. If Benson and all those acting in concert with him are not permanently restrained, they will have an unfair competitive advantage over Voxel and will continue to improperly utilize this information for their own benefit and to the detriment of Voxel.

8

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

47.     Injunctive relief is necessary and appropriate because Benson continues to retain Voxel's trade secrets and/or confidential information unlawfully. The injuries threatened by the use or disclosure of such information by Benson cannot be compensated by money alone.

48.     Without injunctive relief, Voxel is threatened with irreparable harm caused by the loss of value of its confidential and proprietary information misappropriated by Benson.

**FIRST CLAIM FOR RELIEF FOR BREACH OF CONFIDENTIALITY AGREEMENT**

49.     Voxel hereby incorporates by reference and realleges each of the allegations contained in the above paragraphs as though fully set forth in their entirety in this claim for relief.

50.     The Confidentiality Agreement is a valid and enforceable contract between Voxel and Benson.

51.     Voxel performed all material obligations required of it under the Confidentiality Agreement.

52.     Benson breached the Confidentiality Agreement by accessing Confidential Information of Voxel after his employment ended and, upon information and belief, retaining copies of such information for a purpose other than performing duties and responsibilities on behalf of Voxel.

53.     Voxel does not allege any breach based on post-employment competition, solicitation, or other business activities, and seeks relief solely for the misuse or retention of Voxel's trade secret and confidential information and other property.

54.     As a direct and proximate result of Benson's breach of his obligations under the Confidentiality Agreement, Voxel has been damaged and is threatened with the further risk of irreparable harm through the loss in value of its confidential and proprietary information, for which a remedy at law is inadequate.

55.     Voxel also seeks injunctive relief for Defendant's breaches of the parties' Confidentiality Agreement, including the return of its property.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

## SECOND CLAIM FOR RELIEF FOR

## VIOLATION OF CALIFORNIA PENAL CODE § 502

56.     Voxel hereby incorporates by reference and realleges each of the allegations contained in the above paragraphs as though fully set forth in their entirety in this claim for relief.

57.     Voxel specifically does not seek relief for the misappropriation of trade secrets under this claim but rather its statutory rights under California Penal Code Section 502.

58.     California Penal Code Section 502 defines its statutory violations as criminal acts with criminal penalties.

59.     Although Penal Code Section 502 imposes criminal penalties for certain computer-related crimes, it also creates a private right of action that entitles the owner or lessee of a computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of Section 502(c) to bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief.  *See* Cal. Penal Code § 502(e).

60.     When the Legislature enacted Penal Code Section 502, it intended to expand the degree of protection afforded to individuals, businesses, and governmental agencies in California from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems.  Penal Code Section 502(a) provides in relevant part:

> The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.

> The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and

10

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

others within this state that lawfully utilize those computers, computer systems, and data.

61.     California Penal Code Section 502(j) also provides that jurisdiction exists at the location of the targeted computer, computer system, or computer network:

> For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

62.     Voxel is the owner of data, computers, computer systems, and computer networks in or connected to California, which Voxel uses for purpose of conducting its California-based business.

63.     California Penal Code Section 502(c)(1) creates a private right of action against anyone who knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data, regardless of whether the defendant has accessed any of the plaintiff's computers.

64.     California Penal Code Section 502(c)(2) creates a private right of action against anyone who knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

65.     California Penal Code Section 502(c)(3) creates a private right of action against anyone who knowingly and without permission uses or causes to be used computer services.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

66.    California Penal Code Section 502(c)(7) creates a private right of action against anyone who knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

67.    Defendant has violated and continues to violate California Penal Code Section 502(c)(2) by knowingly and without permission accessing, taking, copying, or making use of data from Voxel as alleged herein.

68.    Defendant has violated and continues to violate California Penal Code Section 502(c)(3) by knowingly and without permission using or causing to be used Voxel's computer services.

69.    Defendant has violated and continues to violate California Penal Code Section 502(c)(7) by knowingly and without permission accessing or causing to be accessed Voxel's computer, computer system, or computer network.

70.    In taking the actions alleged above, Defendant violated California Penal Code Section 502.

71.    As an actual and proximate result of Defendant's conduct, Voxel has suffered losses including, but not limited to, the internal and external investigation costs associated with identifying the extent of Defendant's wrongful conduct and attempting to recover the wrongfully accessed, used, taken, copied, and retained data, including by hiring computer forensic investigators and attorneys, among other losses. Voxel reasonably and necessarily incurred these expenditures to verify whether or not its computer systems, computer network, computer programs, and data were or were not altered, damaged, or deleted by Defendant's conduct. Voxel continues to suffer these losses.

72.    As a direct and legal result of Defendant's unlawful conduct within the meaning of California Penal Code Section 502, Voxel has suffered recoverable damages in an amount subject to proof at trial.

73.    Defendant has accessed, used, taken, copied, and/or retained company data without Voxel's permission. Voxel has suffered irreparable injury from these acts, and due to the

12

continuing threat of such injury, has no adequate remedy at law. Accordingly, Voxel is entitled to injunctive relief and other equitable relief, including, without limitation, permanent injunctive relief, restitution, and disgorgement of any and all profits or other benefits that Defendant has obtained in connection with his illegal conduct.

74.    Voxel is informed and believes and based thereon alleges that Defendant, in doing the things herein alleged, acted willfully, maliciously, oppressively, and despicably with the full knowledge of the adverse effect of his actions on Voxel, and with willful and deliberate disregard of the consequences to Voxel. By reason thereof, Voxel is entitled to injunctive relief, and to recover punitive damages from Defendant in an amount to be determined at the time of trial.

75.    Pursuant to California Penal Code Section 502, Voxel is entitled to recover from Defendant its reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (ACTUAL & THREATENED)

76.    Voxel hereby incorporates by reference and realleges each of the allegations above as though fully set forth in their entirety in this claim for relief.

77.    Voxel's trade secrets, alleged above at paragraphs 13-17 and 32, constitute trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836. Voxel's trade secrets are used in, or intended to be used in, interstate commerce as they relate to customers located throughout the United States.

78.    Voxel's trade secrets are valuable because they are not generally known or readily accessible, through proper means, to others who can profit from use of the trade secrets.

79.    Voxel has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring unique usernames and passwords to access Voxel's computer systems and records, restricting physical and electronic access to the most sensitive trade secret information to only those with a business need to know or access the

13

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

information for purposes of performing their job for Voxel, and having employees, contractors, and third parties sign agreements which expressly prohibit the use, removal, or disclosure of such information.

80. The foregoing conduct of Defendant constitutes an actual and threatened misappropriation and misuse of Voxel's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836.

81. Defendant's actions with respect to Voxel's trade secrets, as alleged above, were a deliberate scheme and plan to deprive Voxel of the benefits of Voxel's own substantial investment and efforts and steal the fruits of Voxel's labor.

82. As a proximate result of Defendant's actions as alleged above, Voxel to date has suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial. As a further proximate result of the misappropriation, Defendant has been unjustly enriched through the misappropriation of Voxel's trade secrets. The amount of this unjust enrichment cannot presently be ascertained.

83. Defendant continues to possess, use, and/or disclose Voxel's misappropriated trade secrets. The conduct of Defendant therefore threatens further wrongful misappropriation, use, disclosure, and destruction of Voxel's trade secrets.

84. As a proximate result of Defendant's actions as alleged above, Voxel will continue to suffer actual damages in an amount to be proven at trial unless Defendant is enjoined.

85. Voxel has no adequate remedy at law for these injuries unless and until Defendant is restrained from using Voxel's misappropriated trade secrets in the future and ordered to return such information and property to Voxel, because calculations of damages will be difficult, and Voxel will be compelled to bring multiple suits to protect its interests every time that its trade secrets and confidential information are misused or improperly disclosed. Voxel's damages are not easily quantified but include, and are not limited to, its lost profits and productivity as a

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

result of damage to its reputation, goodwill, disruption of its operations, and time and resources spent investigating the unlawful conduct of Defendant, in an amount to be proven at trial.

86. Voxel, therefore, is entitled to a temporary restraining order, and preliminary and permanent injunctions, as prayed for herein, prohibiting Defendant and all those acting in concert with him from further acts of misuse and disclosure of Voxel's misappropriated trade secrets and ordering Defendant to return such trade secrets to Voxel immediately.

87. Voxel is informed and believes that the conduct of Defendant was, and is, malicious, fraudulent, deliberate, and willful, as revealed by his conduct described above. Voxel is therefore entitled to recover from Defendant exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C).

88. Voxel is also entitled to an award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

## FOURTH CLAIM FOR RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT (ACTUAL & THREATENED)

89. Voxel hereby incorporates by reference and realleges each of the allegations contained in the above paragraphs as though fully set forth in their entirety in this claim for relief.

90. At all relevant times, Voxel was in possession of trade secret information, as alleged herein at paragraphs 13-17, and 32, and as defined by California's Uniform Trade Secrets Act ("CUTSA"), Civil Code section 3426.1(d). As provided above, Defendant was given access to and provided with Voxel's trade secrets, subject to his continuing confidentiality obligations to Voxel.

91. The Voxel information misappropriated by Defendant constitutes trade secrets because Voxel, as described herein, derives independent economic value from that information, such information is not generally known nor readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information

is the subject of reasonable efforts to maintain its secrecy. Voxel's trade secret information described herein is not and was not generally known to Voxel's competitors in the industry.

92. Voxel is informed and believes and therefore alleges that Defendant misappropriated Voxel's trade secret information to obtain and/or assist in the development of a competitive product and injure Voxel.

93. Defendant did misappropriate and continues to threaten to misappropriate Voxel's trade secrets in violation of CUTSA.

94. Defendant improperly took and threatens to improperly use or disclose Voxel's trade secrets to others in violation of CUTSA. This use or disclosure directly violates Defendant's continuing confidentiality obligations in his Confidentiality Agreement with Voxel.

95. By reason of the foregoing, Voxel requests that this Court grant temporary, preliminary, and permanent injunctive relief as requested herein. Voxel has no adequate remedy at law. Unless injunctive relief is granted, Voxel will continue to be irreparably harmed in a manner not fully compensable by money damages.

96. As a proximate result of Defendant's misappropriation and threatened misappropriation of Voxel's trade secrets, Voxel has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be proven at the time of trial, but which are substantial and in excess of the minimum jurisdictional amount of this Court. Such damages include, but are not limited to, the significant costs incurred because of Defendant's unlawful conduct (including investigation and forensic costs and attorney's fees), and Voxel's employees spending significant time in re-directing their efforts to address Defendant's misappropriation and threatened misappropriation of Voxel's trade secrets.

97. Defendant's acts of misappropriation and threatened misappropriation have been willful, fraudulent, and malicious. Therefore, Voxel is entitled to an award of punitive or treble damages and attorneys' fees pursuant to Civil Code sections 3426.3(c) and 3426.4.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

## REQUEST FOR TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF

98.    Voxel hereby incorporates by reference and realleges each of the allegations contained in the above paragraphs as though fully set forth in their entirety in this claim for relief.

99.    Voxel demonstrated, and the evidence to be presented at a hearing and/or trial will show, that Voxel has a likelihood of success on the merits of one or more of its claims set forth in its Complaint.

100.    Voxel will be irreparably harmed without temporary and preliminary injunctive relief that restores the status quo ante between Voxel and Defendant before Defendant committed one or more of the wrongful acts described in this Complaint.

101.    A balancing of the equities favors the entry of temporary and preliminary injunctive relief in favor of Voxel and, without the entry of such relief, Voxel will suffer a greater hardship than Defendant would suffer if such relief were entered.

102.    Voxel has no adequate remedy at law.

103.    It is in the public interest that trade secrets and other confidential information remain protected and that the integrity of protected computers remains intact, rather than the alternative: unabated breaches of confidentiality agreements, disclosures of confidential and trade secret information, and the hacking of computers by individuals and entities who are not permitted to access or use such computers or who access or use such computers in excess of permissions for the purposes of committing fraud, transferring information, and/or destroying information that resides on protected computers.

## PRAYER FOR RELIEF

WHEREFORE, for the wrongful acts of Defendant complained of in the foregoing causes of action, Voxel respectfully requests the following relief:

A.    Judgment in its favor and against Defendant;

B.    Temporary, preliminary, and permanent injunctive relief prohibiting Defendant

17

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

Case 3:26-cv-03216-VC   Document 1   Filed 04/15/26   Page 19 of 23

and all those acting in concert with him from any possession, disclosure, and/or use of Voxel's trade secret and confidential information;

C.     An order that Defendant and all those acting in concert with him return to Voxel any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations, or derivations, belonging to Voxel, including those files which were removed from Voxel or Voxel-owned computers, networks, databases, or accounts, or which were obtained by Defendant or anyone acting on his behalf or in concert with him;

D.     An order that Defendant and all those acting in concert with him return any and all of Voxel's trade secrets and confidential information, and an order prohibiting any further use or benefit from the use of such information;

E.     An order that Defendant and all those acting in concert with him provide for the computer forensic inspection of all computers and other electronic devices, online accounts, and other virtual repositories in their possession, custody, or control, that contain or once contained any Voxel trade secrets and other confidential information;

F.     An order that Defendant and all those acting in concert with him provide for the computer forensic inspection of all computers and other electronic devices, online accounts, and other virtual repositories they used that contain or once contained any Voxel trade secrets and other confidential information;

G.     An order that Defendant and all those acting in concert with him fully account for their actions with regard to all Voxel property, including Voxel's trade secrets and/or confidential information, including actions taken in or on any electronic storage devices, accounts, and virtual repositories;

H.     An award of compensatory, consequential, economic, general, and special damages, as alleged above, in an amount and nature to be proven after the discovery of all relevant evidence and trial, including, without limitation:

a.     actual damages,

b.     lost profits,

18

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

      c.      disgorgement of profits and other ill-gotten gains,

      d.      reasonable royalties,

      e.      established royalties,

      f.      loss of value of the trade secrets,

      g.      head-start damages,

      h.      sweat equity damages,

      i.      avoided development costs, and/or

      j.      unjust enrichment;

I.      An award of compensatory damages to Voxel in an amount to be determined at a hearing and/or trial including, but not limited to, the attorneys' fees, computer forensic fees, and costs Voxel has incurred to investigate and address Defendant's unauthorized access and improper use of Voxel's computers;

J.      An order directing Defendant to disgorge all gross revenues and profits that he or anyone acting in concert or participation with him received as a result of his wrongful conduct, in an amount to be determined at trial;

K.      An award in favor of Voxel for its costs associated with this action, including, without limitation, its attorneys' fees pursuant to the common law and under the Defend Trade Secrets Act, California Uniform Trade Secrets Act, and California Penal Code § 502;

L.      An award in favor of Voxel for its costs, damages, and computer forensics and related investigation fees and costs pursuant to California Penal Code § 502;

M.      An award of exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C) and California Civil Code § 3426.3;

N.      An award of punitive damages in an amount to be determined at trial;

O.      An award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and California Civil Code § 3426.4;

P.      Compensation to Voxel for any unjust enrichment enjoyed by Defendant,

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

including restitution of all revenues, gains, profits, and advantages obtained by Defendant as a result of his wrongful and unlawful conduct, in an amount to be determined at a hearing and/or trial;

Q.    An award of pre-judgment and post-judgment interest as permitted by law;

R.    An order imposing a constructive trust;

S.    An order that Defendant and those acting in concert with him preserve all relevant evidence; and

T.    Any such other legal and equitable relief as the Court deems appropriate.

DATED: April 15, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Sierra J. Chinn-Liu*
    D. Joshua Salinas
    Sierra J. Chinn-Liu
    Attorneys for Plaintiff
    VOXEL LABS INC.

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

## **JURY DEMAND**

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, Voxel Labs Inc. asserts its rights and demands a trial by jury on all issues triable by a jury.

DATED: April 15, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Sierra J. Chinn-Liu*
    D. Joshua Salinas
    Sierra J. Chinn-Liu
    Attorneys for Plaintiff
    VOXEL LABS INC.

21

VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

**VERIFICATION**

1.    I, Bryan O'Sullivan, have full knowledge of, and am competent to testify to, all matters stated herein.

2.    I am the Chief Technology Officer for Voxel Labs Inc.

3.    I have read the foregoing Verified Complaint for Emergency Injunctive Relief and Damages, and I have a reasonable belief that the information contained therein is true and correct.

4.    The Exhibits attached thereto are true and correct copies of the documents they purport to be.

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on 4/15/2026, 2026, at San Francisco, California.


By: _Bryan O'Sullivan_
     Bryan O'Sullivan