Kevin A. Lipeles (Bar No. 244275)
*kevin@kallaw.com*
Thomas H. Schelly (Bar No. 217285)
*thomas@kallaw.com*
LIPELES LAW GROUP, APC
1060 Aviation Blvd., Suite 100
Hermosa Beach, California 90254
Telephone: (310) 322-2211
Fax: (310) 322-2252

Attorneys for Defendant,
BRIAN BENSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOXEL LABS, INC.<br><br>            Plaintiff,<br><br>vs.<br><br>BRIAN BENSON,<br><br>            Defendant. | CASE NO.: 26-cv-03216-VC<br>Judge: Hon. Vince Chhabria<br><br><br>**DEFENDANT BRIAN BENSON'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>DATE: June 25, 2026<br>TIME:  10:00 a.m.<br>CTRM: 3<br><br>Complaint filed: April 15, 2026<br>Trial date: None |

## I. INTRODUCTION

Voxel Labs Inc. seeks a preliminary injunction against a former employee who accessed its platform using continuously active, never-revoked credentials after his employment ended, immediately stopped that access when Voxel asked him to, does not possess any Voxel information, is not employed by or in negotiations with any Voxel competitor, and has affirmatively offered to submit his phone for forensic examination. The relief Voxel requests — compelled surrender of personal devices to a third-party forensic examiner under a protocol of Voxel's own design — is not warranted on this record.

1

TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................1

II.  RELEVANT BACKGROUND ...........................................................2

III. LEGAL STANDARD .......................................................................3

IV. ARGUMENT ....................................................................................4

    A. Voxel Has Not Demonstrated a Likelihood of Success
       on the Merits.................................................................................4

      1. The Alleged Trade Secrets Are Not Identified With Sufficient Particularity  4

      2. The Information is Not Adequately Shown to Qualify as a Trade Secret ......4

      3. The Authorization Question Presents a Genuinely Contested Legal Issue.....5

      4. There is No Evidence of Actual Misappropriation or Threatened Use ..........5

      5. The Forensic Protocol Impasse Does Not Establish Threatened
         Misappropriation.........................................................................6

      6. The Breach of Contract Claim Does Not Strengthen the Case for
         Injunctive Relief.........................................................................6

    B. Voxel Has Not Established Irreparable Harm......................................7

      1. The Harm Voxel Alleges is Speculative, Not Likely ................................7

      2. Benson's Voluntary Cessation Defeats the Claim of Imminence ...................7

      3. The Preliminary Injunction Motion Itself Refutes the Claim of Urgency .......8

      4. Compensable Damages are Available ................................................8

    C. The Balance of Equities Does Not Favor Voxel.................................8

    D. The Public Interest Does Not Require the Relief Voxel Seeks ...........9

    E. A Substantial Bond Should be Required.............................................10

V.  CONCLUSION .................................................................................11

i

# TABLE OF AUTHORITIES

## Cases

Am. Trucking Ass'ns v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009) ...................3

Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ................7

Corelogic Sols., LLC v. Geospan Corp., 2020 U.S. Dist. LEXIS 246349........................9

Harvest Small Bus. Fin. v. Mitnick, 2024 U.S. Dist. LEXIS 32111 ............................8, 9

Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1377 (9th Cir. 1985)........8

PlayUp, Inc. v. Mintas, 350 F.R.D. 47 ...........................................................................9

Ross Stores, Inc. v. Becky Kim, 2025 U.S. Dist. LEXIS 216655....................................6

United States v. Christensen, 828 F.3d 763, 789 (9th Cir. 2015).....................................5

Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008)..............................................2,3


## Statutes

Federal Rule of Civil Procedure 65(c)............................................................................10

Voxel's motion rests on three central claims: that Benson's post-termination access constitutes misappropriation of protectable trade secrets, that his refusal to accept Voxel's unilateral forensic protocol evidences threatened misappropriation, and that injunctive relief is necessary to prevent irreparable harm. None of these claims survives scrutiny. Voxel has presented no evidence of actual use, disclosure, or retention of any information. It has presented no evidence of any competitive mechanism through which the information Benson accessed could harm Voxel. And the forensic "impasse" Voxel characterizes as non-cooperation is in reality a disputed scope negotiation — Benson offered a counter-proposal, and the parties have not yet resolved their differences. That is a discovery dispute, not grounds for an emergency injunction.

Because Voxel cannot satisfy the requirements for preliminary injunctive relief under *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008), its motion should be denied.

## II. <u>RELEVANT BACKGROUND</u>

Benson was notified of the termination of his employment on March 18, 2026. Upon his separation, Voxel suspended his Google Workspace account consistent with its off-boarding practices and its understanding that suspension revoked access to integrated systems using single sign-on. In the course of investigating Benson's post-termination activity, Voxel learned that Google Workspace includes multiple access pathways and session behaviors that may persist independently of account status. In other words, Benson's credentials were never technically revoked — Voxel's own system allowed the access that Voxel now characterizes as unauthorized.

Benson voluntarily and immediately ceased all access to Voxel's platform when Voxel contacted him on April 3, 2026. On April 6, 2026, Voxel's counsel sent Benson a written demand letter by email and FedEx identifying his post-termination access to Voxel's systems and confidential information. On April 8, 2026, Benson called Voxel's counsel to discuss the demand and acknowledged during the call that he had accessed Voxel's customer-specific information after his employment ended. On April 15, 2026, after those efforts failed to result

in cooperation or verification, Voxel filed its Complaint and Ex Parte Application for a Temporary Restraining Order.

Following the TRO proceedings, the parties engaged in communications regarding a potential forensic protocol. On April 22, 2026, after Voxel reviewed Benson's Opposition to Voxel's Motion for TRO and Preliminary Injunction, Voxel's counsel sent Benson's counsel an email regarding Benson's consent to the forensic protocol prepared by Voxel or, if not, whether Benson would file a corrected response to address misstatements in Benson's opposition brief and declaration. On May 5, 2026, Benson's counsel proposed a "forensic examination of the phone for web browsing only between March 18, 2026 and April 3, 2026. In addition, no search for communications with previous employees from 1-2 years ago." Voxel responded that this proposal was too narrow to achieve its stated goals and enumerated follow-up questions, to which Benson's counsel indicated he would respond and would consult with his client. As of Voxel's filing, the parties had not finalized terms.

This is not a case of refusal to cooperate. It is a case of parties actively negotiating protocol scope — a negotiation that should continue in discovery, not be resolved by court order compelling compliance with Voxel's unilateral terms.

## III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). All four elements must be satisfied. A preliminary injunction is an extraordinary remedy that should not be granted lightly, particularly where it compels affirmative action from the restrained party rather than merely preserving the status quo.

///

///

///

## IV. <u>ARGUMENT</u>

### *A. Voxel Has Not Established a Likelihood of Success on the Merits*

#### 1. The Alleged Trade Secrets Are Not Identified with Sufficient Particularity.

To obtain preliminary injunctive relief, a trade secret claimant must identify the claimed secrets with enough specificity to allow the Court to evaluate whether the information is protectable and to craft an appropriately tailored order. Voxel's papers characterize its trade secrets in broad, categorical terms: "customer decision-maker identities," "contact information," and "site-specific details." Voxel's theory is that its trade secrets are "curated internal compilations identifying customer users and decision makers and linking them to specific customer accounts, sites, and operational contexts, together with non-public information reflecting where and how Voxel's services are deployed or under evaluation." But Voxel has not specifically identified which customers' data was accessed that is not publicly available, what particular compilation was at risk, or what unique value any specific accessed record provides that a competitor could not obtain through legitimate means. Without this particularization, neither Benson nor the Court can assess the actual contours of the claimed secrets or whether the relief requested is properly scoped.

#### 2. The Information Is Not Adequately Shown to Qualify as a Trade Secret.

Voxel contends that its compilations "reflect Voxel's independent selection, organization, and contextual layering of customer intelligence developed through substantial time and expense," and that "[t]hat aggregated and contextual information does not exist in any public source." But this assertion is conclusory. The Session Replay Video and accompanying screenshots reflect that the information Benson interacted with in the "Teammates" view consisted of names and email addresses displayed within the application for a customer organization. That type of contact information is frequently available through professional platforms such as LinkedIn and SalesLoft, and Voxel has offered no evidence establishing that the specific records Benson accessed are not readily ascertainable through legitimate, publicly available means. The bare assertion that internal customer information is a trade secret does not establish a likelihood of success, particularly where Voxel has redacted the very records on

4

which it relies, making it impossible for the Court to independently evaluate the claim of secrecy.

### 3. The Authorization Question Presents a Genuinely Contested Legal Issue.

Voxel frames Benson's post-termination access as clearly "unauthorized." The record is more complicated. Voxel suspended Benson's Google Workspace account upon separation, but learned in the course of its investigation that Google Workspace includes multiple access pathways and session behaviors that may persist independently of account status. Voxel promptly updated its off-boarding procedures to address those technical characteristics. The fact that Voxel had to update its own procedures after discovering this vulnerability makes plain that the access was not the result of Benson circumventing a security barrier — it was the result of Voxel's own system allowing continued access. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015), explains that access can be unauthorized even where the user possesses valid credentials — but that proposition cuts both ways: it is a legal conclusion that turns on facts about the scope of authorization, and it cannot be resolved summarily at the preliminary injunction stage on the contested record presented here.

### 4. There Is No Evidence of Actual Misappropriation or Threatened Use.

Voxel's evidence of misappropriation rests entirely on inference from session logs and a session replay video. The session replay depicts Benson navigating within a customer-specific interface and selecting and highlighting customer contact information. This is evidence of viewing and interaction — not of copying, extracting, transmitting, or retaining. Voxel acknowledges it has no forensic evidence that Benson exported any file, transmitted any data outside Voxel's system, communicated with any competitor, or retained any Voxel information on any personal device or account. Benson has represented that he has reviewed his personal devices and accounts and confirmed that no Voxel data resides anywhere in his possession. Voxel's own framing — that Benson's conduct "appeared to involve" copying — concedes that the evidence is inferential, not direct. Courts in this Circuit have recognized that alleged possession, without credible evidence of use or imminent disclosure, is insufficient to establish a likelihood of success on a trade secrets claim. In *Ross Stores, Inc. v. Becky Kim*, 2025 U.S.

5

Dist. LEXIS 216655, the court found that allegations of harm were speculative because the plaintiff failed to show evidence of ongoing or imminent misuse of the misappropriated information. Here, there is not even credible evidence of retention in any actionable sense.

### 5. The Forensic Protocol Impasse Does Not Establish Threatened Misappropriation.

Voxel characterizes Benson's failure to accept its proposed forensic protocol as evidence of "ongoing refusal" that independently establishes threatened misappropriation. This is not the law, and the record does not support the characterization. On May 5, 2026, Benson's counsel proposed a "forensic examination of the phone for web browsing only between March 18, 2026 and April 3, 2026." Voxel found this proposal too narrow but did not reject it outright — it asked follow-up questions and proposed a phone call. As of the filing date, Benson's counsel had indicated he would respond but had not yet done so. This is a scope negotiation, not a refusal. The appropriate mechanism to resolve a discovery protocol dispute is a meet-and-confer and, if necessary, a motion to compel in discovery — not a preliminary injunction compelling compliance with the movant's own protocol. Treating the absence of immediate capitulation to Voxel's terms as evidence of misappropriation would effectively allow any trade secret plaintiff to bypass the discovery process by threatening injunctive relief whenever a defendant declines to accept an inspection protocol.

### 6. The Breach of Contract Claim Does Not Strengthen the Case for Injunctive Relief.

The breach of contract claim rests on the same factual predicate as the trade secrets claims. Benson admits his post-termination access was for personal, non-Voxel purposes. That admission establishes a potential breach of the Agreement's use restrictions — but it does not establish that Benson presently possesses or is threatening to use any Voxel information. The Agreement's return obligation cannot be enforced by injunction if Benson has nothing to return. And the question of whether Benson retains any Voxel information — the central factual dispute — is not resolved by Voxel's circumstantial evidence of session activity from two and a half months ago.

### B. Voxel Has Not Demonstrated Irreparable Harm

#### 1. The Harm Voxel Alleges is Speculative, Not Likely.

The Ninth Circuit requires a plaintiff to demonstrate that irreparable harm is "likely" and "imminent," not merely possible, and that legal remedies such as money damages are inadequate — a real, non-speculative threat of injury that cannot be remedied after the fact. In *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988), the court emphasized that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction," and plaintiffs must demonstrate an "immediate threatened injury." Voxel has not met this standard.

Benson is not employed by a competitor and is not in negotiations with a competitor. He is applying for positions in distribution — a field unrelated to Voxel's business — and presents no identified competitive threat. Ninth Circuit courts require a plaintiff to identify a plausible mechanism by which the defendant's conduct will cause imminent injury; generalized fears of what a former employee "could" do are insufficient. There is no such mechanism here. Voxel has offered no evidence that Benson has used, disclosed, or threatened to disclose any information to anyone.

#### 2. Benson's Voluntary Cessation Defeats the Claim of Imminence.

Benson ceased all access to Voxel's systems immediately when Voxel asked him to. The last access event occurred more than two months before the hearing date. If information was "weaponized," it would have happened by now. The absence of any evidence of use or disclosure after cessation is powerful evidence that there is no imminent threat warranting extraordinary injunctive relief. In the Ninth Circuit, past access or alleged wrongdoing — without evidence of likely future misuse — does not by itself establish a likelihood of irreparable harm warranting emergency injunctive relief. Where the record shows voluntary cessation and no concrete indication of impending disclosure or exploitation, courts routinely find the asserted harm too speculative to justify a TRO.

///

///

7

### 3. The Preliminary Injunction Motion Itself Refutes the Claim of Urgency.

The post-termination access that Voxel cites as the basis for this motion concluded in early April 2026 — over two months before the hearing scheduled for June 25, 2026. Courts in the Ninth Circuit treat delay in seeking injunctive relief as strong evidence that the alleged harm is not imminent and that extraordinary relief is not necessary. In *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985), the court noted that a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Harvest Small Bus. Fin. v. Mitnick*, 2024 U.S. Dist. LEXIS 32111, further illustrates this principle — defendants there successfully argued against TRO necessity based in part on the plaintiff's four-month delay. Voxel cannot maintain that each passing day creates irreparable injury while simultaneously accepting a June hearing date on a motion triggered by events in March and April.

### 4. Compensable Damages are Available.

To the extent Voxel suffered harm from Benson's access — investigation costs, reputational exposure, potential competitive injury — those are quantifiable injuries remediable through damages at trial. The difficulty of calculating damages does not convert an otherwise compensable injury into irreparable harm.

### C. The Balance of Equities Does Not Favor Voxel

Even where some risk is alleged, injunctive relief must be narrowly tailored to prevent the specific threatened harm and should not impose burdens broader than necessary. The relief Voxel seeks — compelled forensic inspection of Benson's personal laptop and cell phone under Voxel's proposed protocol — is not narrowly tailored. It would sweep up personal communications, financial information, privileged attorney-client materials, and unrelated personal data stored on the same devices. Ninth Circuit courts weigh the concrete burdens imposed on the restrained party, including privacy and practical hardship, against the movant's evidentiary showing of imminent harm.

Benson is currently unemployed. He relies on his personal laptop and cell phone for his job search — to submit applications, communicate with recruiters, and research prospective

8

employers. Compelling surrender of those devices would directly impair his ability to seek employment during a period of financial vulnerability, expose his most sensitive personal and professional communications to an adverse party, and deprive him of tools he may be unable to replace.

In *Corelogic Sols., LLC v. Geospan Corp.*, 2020 U.S. Dist. LEXIS 246349, the court denied a request for civil seizure and forensic inspection of defendants' devices and accounts, finding that such extraordinary relief was neither necessary nor appropriate in the absence of evidence of ongoing harm or extraordinary circumstances. In *Harvest Small Bus. Fin. v. Mitnick*, 2024 U.S. Dist. LEXIS 32111, plaintiffs sought broad forensic inspection orders but defendants successfully argued such relief was unwarranted given the lack of exigent circumstances. *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, further establishes that even when some relief is warranted, courts should craft the least burdensome order necessary and avoid overbroad forensic inspection mandates without safeguards.

By contrast, Benson has actually engaged in the forensic protocol negotiation and offered to permit examination of his phone's web browsing history for the relevant period. The disagreement is about scope and parameters — a dispute appropriately resolved through the meet-and-confer and discovery process, not through a preliminary injunction ordering compliance with one party's preferred protocol.

The hardship imposed on Benson by the requested relief is concrete and immediate. The harm to Voxel from denial — given that Benson has ceased access, is not employed by any competitor, and has offered to engage in some form of forensic examination — is speculative at best. The equities do not favor the relief Voxel seeks.

### D. The Public Interest Does Not Require the Relief Voxel Seeks

The public interest favors protection of legitimate trade secrets, but it equally favors protection of individual privacy rights, proportionate judicial remedies, and the integrity of the discovery process. The relief Voxel requests would effectively allow a well-resourced corporate plaintiff to bypass normal discovery procedures by obtaining a court-ordered forensic inspection — under its own proposed terms — before any discovery has commenced. Granting

9

that relief, absent concrete evidence of ongoing harm, would create a troubling template: that any former employee who acknowledges post-termination access to a company's systems faces compelled inspection of personal devices at the employer's chosen scope, regardless of whether the employee has actually retained or used any information.

The public interest is better served by resolving protocol disputes through the ordinary discovery process, with its established protections for proportionality, privacy, and privilege, rather than through injunctive proceedings that replicate those procedures without their attendant safeguards.

### E. A Substantial Bond Should Be Required

Voxel argues that no bond should be required because Section 11(f) of the Agreement provides that Voxel is entitled to seek preliminary injunctive relief without the necessity of posting a bond or other security. But a contractual waiver of Rule 65(c)'s security requirement is subject to the Court's discretion, and courts have recognized that the bond requirement is intended to protect the restrained party from losses caused by an improvidently issued injunction and to allocate the risk of error to the party seeking extraordinary relief. The bond waiver provision in Benson's Agreement was drafted by Voxel and executed by an employee in the context of his employment — it should not operate to immunize Voxel from the financial consequences of an overbroad or erroneous injunction.

Should the Court issue any relief, Benson respectfully requests that Voxel be required to post a meaningful security bond sufficient to compensate Benson for costs, reputational harm, and the disruption to his job search and professional activities that would result from an improvident order. Voxel's own proposed bond amount of $1,000 pursuant to Section 11(f) is wholly inadequate given the concrete and substantial burdens the requested relief would impose on an unemployed individual.

///

///

///

///

10

## V. CONCLUSION

For the foregoing reasons, Defendant Brian Benson respectfully requests that the Court deny Voxel Labs Inc.'s motion for a preliminary injunction. In the alternative, if the Court is inclined to issue any relief, Benson respectfully requests that the Court: (1) limit any order to the narrowest scope necessary to address a specifically identified and concrete risk of harm; (2) require any forensic examination to be conducted pursuant to a protocol negotiated by the parties and approved by the Court, with appropriate privacy protections and neutral oversight; and (3) require Voxel to post a meaningful security bond commensurate with the burdens imposed.

Respectfully submitted,

LIPELES LAW GROUP, APC

Date: June 1, 2026

By: */s/ Thomas H. Schelly*
Kevin A. Lipeles, Esq.
Thomas H. Schelly, Esq.
Attorneys for Defendant
BRIAN BENSON

11

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18, and not a party to the within action. My business address is Lipeles Law Group APC, 1060 Aviation Blvd., Suite 100, Hermosa Beach, CA 90254. My electronic service address is: LindaB@kallaw.com. On the date below, I served the foregoing document(s) described as:

DEFENDANT BRIAN BENSON'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

By sending a true copy thereof to the address listed below:

| | |
|---|---|
| D. Joshua Salinas, Esq.<br>Sierra J Chinn-Liu, Esq.<br>Seyfarth Shaw LLP<br>2029 Century Park East, Suite 3500<br>Los Angeles, CA 90067<br>Tel: 310-277-7200<br>Fax: 310-201-5219<br>Email: jsalinas@seyfarth.com<br>Email: schinnliu@seyfarth.com | Attorneys for Plaintiff<br>VOXEL LABS INC. |

■ **By E-Mail or Electronic Transmission.** I caused the documents to be sent to the persons at the email address listed above in a PDF file, and the transmission appeared to be successful.

☐ **By United States Mail.** I deposited a sealed envelope containing a true and correct copy of the documents listed above with the United States Postal Service with the postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Hermosa Beach, California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on June 1, 2026 at Hermosa Beach, California.

_____
Linda Beck

LIPELES LAW GROUP, APC
1060 Aviation Blvd., Suite 100
Hermosa Beach, CA 90254

PROOF OF SERVICE

1