SEYFARTH SHAW LLP
D. Joshua Salinas (SBN 282065)
jsalinas@seyfarth.com
Sierra J. Chinn-Liu (SBN 322994)
schinnliu@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Plaintiff VOXEL LABS INC.


Kevin A. Lipeles (Bar No. 244275)
*kevin@kallaw.com*
Thomas H. Schelly (Bar No. 217285)
*thomas@kallaw.com*
LIPELES LAW GROUP, APC
1060 Aviation Blvd., Suite 100
Hermosa Beach, California 90254
Telephone: (310) 322-2211
Fax: (310) 322-2252

Attorneys for Defendant BRIAN BENSON

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOXEL LABS INC., | Case No. 3:26-cv-03216-VC |
| Plaintiff, | [~~PROPOSED~~] ORDER APPROVING STIPULATED PRELIMINARY INJUNCTION ORDER |
| v. | |
| BRIAN BENSON, | Verified Complaint filed: April 15, 2026 |
| Defendant. | |

[~~PROPOSED~~] ORDER APPROVING STIPULATED PRELIMINARY INJUNCTION ORDER

The Court, having read and considered the stipulation between Plaintiff Voxel Labs Inc. ("Voxel") and Defendant Brian Benson ("Benson") for the entry of a Preliminary Injunction Order, and good cause appearing,

**IT IS ORDERED** that the stipulation is **APPROVED**.

**IT IS FURTHER ORDERED** that:

1.      Benson and all persons or entities acting on his behalf, for his benefit or in active concert or participation with him are enjoined from possessing, using, or disclosing Voxel's trade secrets or confidential information;

2.      Voxel and Benson will comply with the terms of the Stipulated Forensic Inspection Protocol Agreement, which is attached hereto as Exhibit 1.

**IT IS FURTHER ORDERED** that the above Preliminary Injunction Order is effective immediately and shall remain in effect pending trial in this action or further order of this Court.

**IT IS FURTHER ORDERED** that Voxel is not required to file an undertaking in connection with the entry of this order.

**IT IS FURTHER ORDERED** that the hearing set for June 25, 2026, at 10:00 a.m. regarding an order to show cause as to the issuance of a preliminary injunction is hereby vacated as moot.

**IT IS SO ORDERED.**

DATED:      June 22, 2026

_____
Judge Vince Chhabria
United States District Judge

1

[PROPOSED] ORDER APPROVING STIPULATED PRELIMINARY INJUNCTION ORDER

# EXHIBIT 1

<u>**STIPULATED FORENSIC INSPECTION PROTOCOL AGREEMENT**</u>

This Stipulated Forensic Inspection Protocol Agreement (the "Agreement") is made and entered into as of June 18, 2026 ("Effective Date"), by and between Voxel Labs Inc. ("Voxel") and Brian Benson ("Benson"). Voxel and Benson are referred to herein individually as a "Party" and collectively as the "Parties."

I.  **DEFINITIONS**

    a.  **"Confidential Information"** means:

        i.  All information defined as "Confidential Information" in the Confidentiality Information and Invention Assignment Agreement ("Confidentiality Agreement") signed by Benson; and

        ii.  Trade secrets as defined by the Defend Trade Secrets Act of 2016.

    b.  **"Device Sources"** shall be defined as all workstations and external storage devices in the possession, custody, or control of Benson on which Voxel information and property was transferred, accessed, and/or stored, including devices bearing the following serial numbers:

        i.  iPhone 17 Pro, DDJNXT6LR3 is serial number, and 512 GB.

    c.  "**Forensic Image**" shall be defined as a full forensic bitstream image of a device.

II.  **COLLECTION AND IMAGING**

    a.  Within three (3) business days of the Effective Date, Voxel's forensic vendor, Epiq Systems ("Forensic Vendor"), will ship a remote forensic collection kit ("Collection Kit") to Benson.

    b.  Within one (1) business day of receiving the Collection Kit, Benson will make himself available to the Forensic Vendor to facilitate the creation of Forensic Images forensic imaging of the Device Sources, including returning the Collection Kit to the Forensic Vendor.

    c.  The Forensic Image will be created and validated through the use of industry-standard equipment and best practices methodology and shall include the generation of MD5 hash values or other industry standard hash values, if applicable. Forensic Vendor will take all reasonable steps to identify and recover deleted files, file fragments, and corresponding forensic artifacts from the Forensic Images.

III.  **REPORTING**

    a.  **Preparation of Initial Reports**

326517406v.2

i. Within seven (7) business day of the receipt of the Collection Kit, Forensic Vendor will prepare reports containing the following information extracted from the Forensic Images, if available, and distribute those reports to the Parties:

1. For each Device Source, the manufacturer, model, product and serial number collected from the device's firmware, the serial number physically printed on the device, capacity, and physical description;

2. For each Device Source, a listing of each file created, modified, or accessed on or after February 1, 2026 that contain any of the search terms identified in Exhibit A, including the following metadata fields, if available: filename, file path, file extension, date created (system-level and file-level), date modified (system-level and file-level), date accessed (system-level and file-level), the file size, an MD5 hash value or other industry-standard hash value, the date the file was deleted (if applicable), the search term(s) from Exhibit A contained in the file, and a unique numerical identifier;

3. For each workstation, a listing of all removable devices attached to the workstation on or after February 1, 2026, including the following information: the manufacturer, model, product and serial number collected from the removable device's firmware, capacity, the date and time the device was attached to the workstation, and whether those device were included in the Device Sources;

4. For each workstation, a listing identifying all forensic artifacts and associated metadata relating to file and folder activity on or after on or after February 1, 2026, including but not limited to LNK files, shell bags, and/or jump lists;

5. For each workstation, whether there is evidence of the use of cloud-based storage accounts on or after February 1, 2026, including but not limited to Dropbox, YouSendIt, SugarSync, Apple iCloud, Microsoft OneDrive, Box.net, Google Drive, Sharepoint, and if so, the name of the cloud-based storage service, and a listing of any files within a folder whose purpose is to synchronize to or from the cloud-based storage account, including the following metadata fields, if available: filename, file path, date created (system-level and file-level), date modified (system-level and file-level), date accessed (system-level and file-level), the file size, an MD5 hash value or other industry standard hash value, whether the file was deleted or identified for deletion, the date the file was deleted (if applicable), and a unique numerical identifier;

6.        For each Device Source, a report summarizing internet history on or after February 1, 2026 that contain any of the search terms identified in Exhibit A, including all available metadata;

7.        For each Device Source, a listing of each email sent or received on or after February 1, 2026 that contain any of the search terms identified in Exhibit A, including the following metadata fields, if available: subject, from, to, CC, BCC, date sent, the file path of the email, the file name of any attachments, the file extensions of any attachments, the file size of any attachments, the MD5 hash value or other industry-standard hash value of any attachments, the search term(s) from Exhibit A contained in the file, and a unique numerical identifier;

8.        For each mobile device, a listing of installed programs and/or software on the device whose primary purpose involves: (1) messaging (SMS, MMS, text, chat, and/or email); (2) synchronization, storage, or transfer of documents or data (such as to cloud-based storage platforms); or (3) the secure deletion or wiping of electronically stored information;

9.        For each mobile device (if any), a listing of all available text messages, multimedia messages, and chat messages available in default or third-party messaging applications on or after February 1, 2026 that contain any of the search terms identified in Exhibit A, including all available metadata and attachments;

10.        For each mobile device (if any), a listing of all available contacts available in default or third-party messaging applications that contain any of the search terms identified in Exhibit A, including all available metadata; and

11.        For each Device Source, whether there is any evidence of the use of software whose primary purpose is to forensically delete or render unrecoverable electronically stored information, and if so, the name of the software, the date the software was used, and any additional evidence of its usage (if applicable).

ii.   If Forensic Vendor needs additional time to complete its work, the Parties agree that they will discuss the matter in good faith and attempt to agree on a reasonable period of time in which it may have to do so.

iii.   To the extent that any additional devices and/or accounts are identified pursuant to III(a)(3) or III(a)(5), those devices and/or accounts will be subject to this Agreement.

b. **Review of Reports and Documents**

i. Within five (5) business days of receiving the Initial Reports, counsel for Voxel will provide Benson and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information ("Inspection Documents Report").

ii. Within two (2) business days of being provided with the Inspection Documents Report, Forensic Vendor will provide the corresponding documents to the Parties for review within a review platform ("Review Documents").

iii. Within seven (7) business days of receiving access to the Review Documents, counsel for Voxel will identify to Benson the documents that contain Confidential Information, if any ("Misappropriated Documents Report").

iv. Within three (3) business days of receiving the Misappropriated Documents Report, Benson shall determine whether it challenges any of the Misappropriated Documents, and, to the extent it does, the Parties will meet and confer to resolve any disputes within five (5) business days of such notification.

## IV. REMEDIATION

a. Within three (3) business days of the Parties reaching an agreement regarding the Confidential Information located on the Device Sources, Forensic Vendor will securely delete all Confidential Information in a forensically sound manner from those sources.

b. To the extent that Forensic Vendor identifies ESI that cannot be collected, such as communications via ephemeral messaging applications like Signal, the parties will develop a separate workflow for the Forensic Vendor to identify and remediate any Confidential Information located on those sources.

c. To the extent that Forensic Vendor identifies ESI that is being synchronized or backed up to a cloud-basted storage location, the Forensic Vendor will take reasonable steps to delete any pre-remediation backups that may exist in the cloud-based storage location.

## V. COSTS

a. Voxel will be responsible for the fees incurred by Forensic Vendor, unless Confidential Information is identified on the Device Sources requiring remediation, in which case Benson will be solely responsible for all fees incurred by Forensic Vendor.

## VI. ADDITIONAL CONSIDERATIONS

326517406v.2

a.  Following Forensic Vendor's work pursuant to the Agreement, Benson will provide to Voxel a signed copy of the Certification listed in Exhibit B appropriately revised to account for any additional devices identified pursuant to Paragraph III(a)(iii) of this Protocol.

b.  To the extent that additional reports or analysis beyond that which is specifically authorized by this protocol are requested, the parties agree to meet and confer on their purpose and content.

326517406v.2

## **Exhibit A – Search Terms**

[The parties have agreed upon the search terms to be applied by the Forensic Vendor and shall provide them directly to the Forensic Vendor.]

**<u>Exhibit B – Certification of Brian Benson</u>**

I, Brian Benson, hereby certify under the pains and penalties of perjury, as follows:

1.    Consistent with Voxel Labs Inc. ("Voxel") Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement"), I understood then, as I do now, that I was required to, among other things, keep in the strictest trust and confidence all Voxel Confidential Information and that I would not use or disclose such Voxel Confidential Information without the written consent of Voxel, except as may be necessary in the ordinary course of performing my duties as an employee of Voxel

2.    During my employment with Voxel, I regularly worked with documents containing Voxel Confidential Information.

3.    Between March 18, 2026 through April 3, 2026, I accessed Voxel Confidential Information from my personal iPhone ("Accessed Voxel Confidential Information").

4.    I have not shared, disclosed, disseminated, or otherwise transmitted any Accessed Voxel Confidential Information, or any excerpts or components of Accessed Voxel Confidential Information, to any person or entity outside of Voxel. Additionally, I have not shared, disclosed, disseminated, or otherwise transmitted any other Voxel Confidential Information to my personal accounts or devices or to any person or entity outside of Voxel.

5.    I have not used, saved, downloaded, or otherwise retained any of the Accessed Voxel Confidential Information thereto, including any excerpts or components of the Accessed Voxel Confidential Information, or any other Voxel Confidential Information.

6.    I have not printed, created physical copies, or retained any of the Accessed Voxel Confidential Information, including any excerpts or components of those Accessed Voxel Confidential Information, or any other Voxel Confidential Information.

7.    I have not verbally discussed the contents of the Accessed Voxel Confidential Information, including any excerpts or components of those Accessed Voxel Confidential Information, or any other Voxel Confidential Information, to any person or entity outside of Voxel.

8.    To my knowledge, after the deletion of the Voxel Confidential Information by the Forensic Vendor, I do not have any Voxel Confidential Information in my possession, custody, or control, including in any personal email accounts, cloud-based storage accounts, electronic devices, and/or in hard copy format.

9.    I will not, going forward, share, disclose, disseminate, transmit, use, save, download, print, retain, or discuss any Voxel Confidential Information with any person or entity outside of Voxel. To the extent that I have any questions as to whether information in my possession, custody, or control is Voxel Confidential Information, I will contact Ted Koerth at Voxel immediately at ted@voxelai.com.

10.     If at any point I learn that, contrary to the good faith statements set forth in this certification, I am in possession of any Voxel Confidential Information, I will contact Ted Koerth at Voxel immediately at ted@voxelai.com immediately and coordinate with Voxel or its designee to securely and efficiently remediate that information as soon as possible.

11.     I understand that should Voxel learn that any of the representations in this certification are false or that I have violated my post-employment obligations, it may initiate legal proceedings against me, and that Voxel is not waiving or releasing any such claims by accepting this certification.  I further agree that if Voxel initiates such a proceeding against me, Voxel  may be entitled to seek temporary, preliminary, or permanent injunctive relief, as well as a forensic examination of all electronic devices and accounts in my possession, custody, or control, on which Voxel has a reasonable belief that Voxel Confidential Information may reside in violation of the provisions of Voxel's Confidentiality Agreement.

_____

Brian Benson

Dated:

326517406v.2